IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                        Criminal No. 3:18-cr-155

ERLIN TORRES ZUNIGA,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (the "Motion") (ECF No. 13), which for the following reasons, will be denied.

### BACKGROUND

### I.  Procedural Context

Erlin Torres Zuniga ("Torres")[1] was charged in a one-count indictment with illegal reentry pursuant to 8 U.S.C. § 1326(a). ECF No. 1. On February 22, 2019, Torres filed the Motion. ECF No. 13. The parties briefed the Motion,[2] and, on April 9 and 10, 2019, the Court received evidence and heard oral argument on it. The Motion is now ripe for decision.

### II.  Factual Background

Torres is a citizen of Honduras. ECF No. 14 at 1; Gov't Ex. 2. Torres, then 17-years-old, entered the United States illegally

---

[1]  The Court follows the lead of counsel for the Defendant in referring to Torres Zuniga as "Torres."

[2]  Torres did not file a reply brief.

near Sasabe, Arizona sometime around July 11, 2007. Gov't Ex. 2. On July 16, 2007, Torres was served in person with a Notice to Appear ("NTA") informing him that he was to appear at a future removal hearing and advising him of the consequences of failing to appear.[3] Gov't Ex. 2 (the "2007 NTA"). Thereafter, Torres attended an immigration hearing on September 28, 2007 at which he was granted voluntary departure to Honduras.[4] Gov't Ex. 3. Torres left the United States on October 31, 2007 on an immigration charter flight from Houston, Texas. Gov't Ex. 4. This was Torres' first known encounter with immigration officials.

Then, on or around February 5, 2008, Torres reentered the United States illegally, again near Sasabe, Arizona. Gov't Ex. 5. Torres was issued a second NTA on February 6, 2008. Id. (the "2008 NTA"). The 2008 NTA indicates that Torres was being held at the Southwest Key Unaccompanied Minor Shelter in Phoenix.[5] Id.; ECF

---

[3] Though the NTA is written in English, the "Certificate of Service" indicates that Torres also received oral notice in Spanish. Gov't Ex. 2.

[4] Voluntary departure is not a prior removal for purposes of 8 U.S.C. § 1326. See United States v. Lopez-Collazo, 824 F.3d 453, 459 (4th Cir. 2016) (citing United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 n.1 (9th Cir. 2004) (per curium)). Accordingly, Torres' 2007 voluntary departure from the United States is not the predicate removal for his current illegal reentry charge. That charge is founded on Torres' 2008 removal and subsequent re-entry.

[5] That document also incorrectly states that Torres was previously "removed from the United States" on "11/06/2007." Gov't Ex. 5. The record is clear that Torres left by voluntary departure on October 31, 2007. See Gov't Exs. 3-4.

No. 13 at 1.

The 2008 NTA did not contain a date or time for Torres'
immigration hearing. Gov't Ex. 5; ECF No. 13 at 1; ECF No. 14 at
1. The 2008 NTA's Certificate of Service reflects that Torres was
served with the NTA in person on February 6, 2008, and that he was
given oral notice of the time and place of his immigration hearing,
as well as the consequences of not appearing. Govt' Ex. 5. An
attachment to the 2008 NTA included a list of free legal services.
Id.

On March 4, 2008, while still held at the Southwest Key
Unaccompanied Minor Shelter, a Notice of Hearing ("NOH") was
provided to Torres. The NOH advised Torres that his hearing before
the immigration court would occur on March 17, 2008 at 9:00 a.m.
at the specified immigration court in Phoenix, Arizona. Gov't Ex.
6. The Certificate of Service does not indicate how the NOH was
served on Torres, but does indicate that the NOH was served on the
"Alien c/o Custodial Officer" and also that it was served on "DHS."
Id.

Torres appeared in person at the immigration hearing on March
17, 2008. Gov't Ex. 7 (indicating Order of the Immigration Court
was served on Torres in person); ECF No. 14 at 2. At the hearing,
Torres was represented by pro bono counsel Elizabeth Sweet. ECF
No. 19 at 2 (Immigration Hr'g Tr.). The immigration court allowed

a short recess for Torres to consult with counsel. Id. at 3. Through counsel, Torres "concede[d] proper service of the charging document," "admit[ted] [the remaining] factual allegations" in the NTA, "designate[d] Honduras as [the] country of removal," and "waive[d] appeal." Id. at 2-4. Torres told the Immigration Judge that he wanted to return to Honduras and that he did not fear harm in returning there. Id. at 4. At the close of the hearing, Ms. Sweet withdrew as Torres' counsel. Id.

On that same day (March 17, 2008), the immigration court issued an Order of Removal for Torres, designating Honduras as the country of removal. Gov't Ex. 7. A Warrant of Removal/Deportation for Torres was issued on April 8, 2008. Gov't Ex. 8. Torres was removed from the United States on an immigration flight from Houston, Texas on April 14, 2008. Id. At the time of his 2008 removal, Torres was issued (and signed) a form informing him that he was prohibited from entering the United States for a period of 10 years. Id.

Following his removal in 2008, Torres' immigration record establishes that he re-entered the United States illegally on or about June 14, 2012, on or about February 5, 2013, and on or about March 31, 2014. See Gov't Exs. 9, 11, 13. In each case, he was encountered by immigration officials and his 2008 Removal Order (Gov't Ex. 7) was reinstated. Id. And, in each case, pursuant to

4

the 2008 Removal Order, he was removed from the United States. See Gov't Exs. 10, 12, 14. At each removal, Torres was issued (and signed) a form informing him that he was now prohibited from entering the United States for a period of 20 years because he had illegally entered the United States following removal. Id.

Torres was then encountered in Virginia on or about November 27, 2018.[6] See ECF No. 1. Thereafter, he was indicted for the presently pending illegal reentry charge. Id.

## DISCUSSION

### I. Framework For Collateral Challenges To Prior Deportation Orders

Torres has been charged with illegal reentry under 8 U.S.C. § 1326(a). To prove that charge, one of the elements that the Government will have to establish is that Torres "has been denied admission, excluded, deported, or removed" and thereafter reentered the United States without, inter alia, the permission of the United States Attorney General. 8 U.S.C. § 1326(a). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court of the United States held that, in illegal reentry cases, an alien has a due process right to challenge the underlying deportation order. Thereafter, Congress codified the due process requirements in 8 U.S.C. § 1326(d). See United States v. Moreno-Tapia, 848 F.3d

---

[6]    The record is not clear about why Torres was encountered on that date.

162, 165-66, 169 (4th Cir. 2017). At bottom, Section 1326(d) "is concerned with failures of due process in an immigration proceeding that would make it fundamentally unfair to rely on a removal order coming out of that proceeding." Id. at 169. The statute focuses the inquiry on whether there were "procedural defect[s] in an immigration proceeding [that] insulate[] the resulting order from judicial review. . . ." Id.

Section 1326(d) sets out three elements that an alien must prove to challenge the underlying deportation order. In full, that subsection reads:

> In a criminal proceeding under this section [8 U.S.C. § 1326], an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added). To satisfy Section 1326(d)(3), the Fourth Circuit has held that an alien "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. El Shami, 434 F.3d 659, 664 (4th

6

Cir. 2005) (quoting United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003)). To show prejudice, the alien must show that, "but for the errors complained of, there was a reasonable probability that he would not have been deported." Id. at 665. An alien may be excused from meeting certain Section 1326(d) requirements if the underlying deportation proceeding was procedurally flawed in a material way. See Moreno-Tapia, 848 F.3d at 169; United States v. Lopez-Collazo, 824 F.3d 453, 459-62 (4th Cir. 2016) (due process violation where alien was served the I-851 form in language he did not understand); El Shami, 434 F.3d at 662-64 (excusal from Sections 1326(d)(1) and (d)(2) and due process violation where alien did not receive notice of his immigration proceeding).

It is evident from the statutory text that the defendant must satisfy (or be excused from) all three elements of Section 1326(d) to succeed in a collateral challenge. And, this Court has so held. United States v. Gonzalez-Ferretiz, No. 3:18-cr-117, 2019 WL 943388, *3-4 (E.D. Va. Feb. 26, 2019) (surveying Fourth Circuit and district court decisions and holding "that an alien may only challenge his underlying deportation order by satisfying the three requirements of Section 1326(d)"); see also Moreno-Tapia, 848 F.3d at 166; El Shami, 434 F.3d at 663; United States v. Gomez-Salinas, No.2:19cr10, 2019 WL 1141063, *2-4 (E.D. Va. Mar. 12, 2019) (Davis,

7

C.J.) ("[A] defendant must satisfy all three provisions [of Section 1326(d)] before he may wage a collateral attack on the prior removal order."); <u>United States v. Romero-Caceres</u>, 356 F. Supp. 3d 541, 547 (E.D. Va. 2018) ("[D]efendant here may not challenge the June 2007 Removal Order unless he meets all three § 1326(d) requirements."). The Court's analysis in <u>Gonzalez-Ferretiz</u> applies in full force here.[7]

As the Court has previously noted, the burden of proof to establish that the elements of Section 1326(d) have been satisfied "rests with the defendant." <u>United States v. Galcia</u>, No. 1:15cr59, 2016 WL 4054926, *2 (E.D. Va. July 26, 2016). And, that burden must be met by "a preponderance of the evidence." <u>Id.</u> (citing

---

[7]     As the Court discussed in <u>Gonzalez-Ferretiz</u>, language in <u>Moreno-Tapia</u> and a recent opinion by Judge Brinkema suggest that collateral challenges outside of Section 1326(d) might be possible. <u>See</u> <u>Moreno-Tapia</u>, 848 F.3d at 170 ("We need not decide today. . .whether due process might in some circumstances demand that an immigration order based on an unconstitutional conviction be subject to collateral attack."); <u>United States v. Rivera Lopez</u>, 355 F. Supp. 3d 428, 435 (E.D. Va. 2018) (it "remains an open question" whether "due process requires that a defendant be given an opportunity to bring a collateral attack <u>beyond</u> the requirements and limitations of § 1326(d)") (emphasis in original).

The Court continues to be of the view that, at this juncture, given the clear language of the statute and the fact that <u>Moreno-Tapia</u>, <u>Lopez-Collazo</u>, and <u>El Shami</u> all perform the collateral attack analysis solely within the Section 1326(d) framework, the cogent, well-reasoned approach taken in <u>Romero-Caceres</u> correctly sets out the proper framework for resolving challenges such as the one made here by Torres.

8

several cases). If the alien meets his burden, "the illegal reentry charge must be dismissed as a matter of law." El Shami, 434 F.3d at 663 (citing Wilson).

In sum, allowing collateral challenges in Section 1326 prosecutions outside of Section 1326(d) flies in the face of the clear statutory text and Congress' intent.[8] Accordingly, if the Court determines that Torres has failed to satisfy any of the three elements of Section 1326(d), his collateral challenge must be rejected, and the Motion will be denied. Conversely, if Torres satisfies (or is excused from) the three elements of Section 1326(d), the illegal reentry indictment must be dismissed. See El Shami, 434 F.3d at 663.

## II. Analysis

Torres argues that the Motion should be granted because the immigration court in 2008 lacked jurisdiction to order him removed. This jurisdictional argument proceeds outside of the requirements of Section 1326(d). Then, Torres makes a passing attempt—and

---

[8] The "Section-by-Section" analysis of the legislation that added Section 1326(d) states that the new subsection "allow[s] a court in a criminal proceeding against a deported alien who re-enters the U.S. to re-examine the underlying deportation order only if the alien" satisfies the three requirements of Section 1326(d). 140 Cong. Rec. S.5558-01 (daily ed. May 11, 1994), 1994 WL 181390, at *S5571 (emphasis added). "This language taken from United States v. Mendoza-Lopez, 481 U.S. 828 (1987), is intended to ensure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation orders." Id.

clearly fails—to fit his jurisdictional argument into the mandatory requirements of Section 1326(d). It is appropriate to address both arguments. And, for the reasons set forth below, the Court will deny Torres' Motion.

## A. Jurisdiction Of Immigration Court

Torres argues that the immigration court lacked jurisdiction in 2008 and that, therefore, his 2008 removal order was ultra vires and cannot be used to support a Section 1326 prosecution. See ECF No. 13 at 5-16. That argument relies on the decision of the Supreme Court of the United States in Pereira v. Sessions, 138 S. Ct. 2105 (2018). The argument proceeds as follows: (1) a document titled "Notice to Appear" without a date or time is not an NTA under 8 U.S.C. § 1229(a) after Pereira's interpretation; (2) a proper NTA (as defined by § 1229(a)) is required to vest jurisdiction in the immigration court; (3) the NTA served on Torres did not contain the date and time of his removal hearing; (4) jurisdiction did not vest in the immigration court that ordered his removal, making its procedures a "legal nullity"; and (5) no proper prior removal exists upon which to base a prosecution under 8 U.S.C. § 1326. See ECF No. 13 at 5-16.

The Government argues that Torres must proceed through Section 1326(d) and that he has failed to demonstrate that he satisfies any of the requirements of that statute. See ECF No. 14

10

at 2-17. It further argues that Pereira dealt with a different question and has no application here; that jurisdiction of the immigration courts is governed by regulations, which were complied with here; that any defects in the NTA were cured by the subsequent NOH; and that any defects in the NTA "should be considered a procedural, ministerial defect that did not prevent the [NTA] from invoking the immigration judge's authority over the case." Id. at 6-16.

A few District Courts have agreed with Torres' argument about the impact of Pereira on the jurisdiction of the immigration court.[9] However, that is a clear minority position. As far as the Court is aware, every District Court in this Circuit to have considered a jurisdictional attack based on Pereira has rejected it.[10] And, unpublished, non-binding Fourth Circuit authority

---

[9] See, e.g., United States v. Tzul, 345 F. Supp. 3d. 785 (S.D. Tex. 2018); United States v. Ortiz, 347 F. Supp. 3d 402 (D.N.D. 2018); United States v. Valladares, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018); United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); see also Kit Johnson, Pereira v. Sessions: A Jurisdictional Surprise for Immigration Courts, 3 Colum. Hum. Rts. L. Rev. Online 1 (2018).

[10] See, e.g., United States v. Flores, No.3:18-cr-152-JAG, 2019 WL 1756532 (E.D. Va. April 19, 2019); United States v. Cruz Bonilla, No.3:18-cr-150-JAG, 2019 WL 1756533 (E.D. Va. April 19, 2019); United States v. Gomez-Salinas, No. 2:19cr10, 2019 WL 1141063 (E.D. Va. Mar. 12, 2019); United States v. Hernandez-Aguilar, No. 5:18-CR-137-FL-1, 2019 WL 456172 (E.D.N.C. Feb. 5, 2019); United States v. Vasquez Flores, 362 F. Supp. 3d 349 (W.D. Va. 2019); United States v. Rivera Lopez, 355 F. Supp. 3d 428 (E.D. Va. 2018); United States v. Romero-Caceres, 356 F. Supp. 3d 541

supports the logic of that view. See Leonard v. Whitaker, 746 Fed.
Appx 269, 269-70 (4th Cir. 2018) (unpublished) (per curium); United
States v. Perez-Arellano, No. 18-4301, 2018 WL 6617703, at *2-3
(4th Cir. Dec. 17, 2018) (unpublished) (per curium). At least three
Courts of Appeals have rejected similar jurisdictional attacks in
published opinions, and no Circuit Court decision to the contrary
has been cited by Torres. See Banegas Gomez v. Barr, __ F.3d __,
2019 WL 1768914 (2d Cir. 2019); Karingithi v. Whitaker, 913 F.3d
1158 (9th Cir. 2019); Hernandez-Perez v. Whitaker, 911 F.3d 305
(6th Cir. 2018). In other words, the clear weight of authority
is against Torres' position.

The Court agrees with the well-reasoned analysis in Gomez-
Salinas that regulations, not the statutory provisions at issue in
Pereira, govern the vesting of jurisdiction in the immigration
courts. 2019 WL 1141063 at *4. First, "the statute governing
removal proceedings is silent as to the jurisdiction of the
immigration court." Id.; 8 U.S.C. § 1229; see also Karingithi, 913
F.3d at 1160 ("Section 1229 says nothing about the Immigration
Court's jurisdiction.").

Second, because the statue is silent on jurisdiction, the
Attorney General has promulgated a regulation providing that

(E.D. Va. 2018); United States v. Ramirez, No. 3:18-cr-00026, 2018
WL 6037540 (W.D. Va. Nov. 16, 2018).

"[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."[11] 8 C.F.R. § 1003.14(a); Gomez-Salinas, 2019 WL 1141063 at *4. Under a separate regulation, 8 C.F.R. § 1003.13, an NTA is defined as a "charging document."

Chief Judge Davis succinctly described the requirements of the regulatory NTA and the differences between the statute and the regulations:

> Both the statute and the regulation list requirements for the contents of a Notice to Appear. The regulation requires a Notice to Appear to include specified information, such as "[t]he nature of the proceedings," "[t]he acts or conduct alleged to be in violation of law," and "[n]otice that the alien may be represented, at no cost to the government, by counsel or other representative." 8 C.F.R. § 1003.15 (b). The regulation does not mandate that the time and date of proceedings appear in the initial notice; the time and date only need to be included "where practicable." 8 C.F.R. § 1003.18(b). If "that information is not contained in the Notice to Appear," the regulation permits "scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing" subsequently. Id. The statute contains largely the same requirements

---

[11]    In Shogunle v. Holder, the Fourth Circuit indicated that the NTA had to be filed with the immigration court before jurisdiction would vest. 336 Fed. Appx. 322, 324-25 (4th Cir. 2009) (unpublished) (per curium). Torres does not argue that the NTA was not filed with the immigration court; rather, he argues that the NTA was defective. Shogunle does not apply here because the "charging document" was filed with the immigration court. See Vasquez Flores, 362 F. Supp. 3d at 355 (rejecting similar argument based on Shogunle).

as the regulation, except it demands inclusion of "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a) (1)(G)(i).

Gomez-Salinas, 2019 WL 1141063 at *4. Accordingly, the fact that the 2008 NTA in the record (Gov't Ex. 5) did not contain the date and time of Torres' hearing is not dispositive in this case because the regulatory definition did not require that. Torres does not argue that the NTA was not filed with the immigration court, as required by the regulation.

Pereira v. Sessions, 138 S. Ct. 2105 (2018) does not change this analysis. In Pereira, the Supreme Court dealt with a "narrow question" that "lies at the intersection of [two] statutory provisions." 138 S. Ct. at 2110. That question was whether a "notice to appear" that "fails to specify either the time or place of the removal proceedings. . .trigger[s] the stop-time rule[.]"[12] Id. Because the "stop-time rule" explicitly cross references a

---

[12]    8 U.S.C. § 1229b(b)(1) permits the Attorney General to "cancel removal of" certain aliens if, among other requirements, the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." § 1229b(b)(1)(A).

The "stop-time rule" states that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end. . .when the alien is served a notice to appear under section 1229(a) of this title. . . ." 8 § 1229b(d)(1) (emphasis added). In other words, the statutory provision establishing the "stop-time rule" expressly incorporates the statutory definition of "notice to appear" found in 8 U.S.C. § 1229(a).

"notice to appear under section 1229(a) of this title," the Supreme Court looked to that statutory section. Id.; see also id. at 2114. That section, 8 U.S.C. § 1229(a), requires, inter alia, that a notice to appear "specify[]. . .(G)(i) The time and place at which the proceedings will be held." Id. at 2110. Finding that the "statutory text alone [was] enough to resolve [the] case," id. at 2114, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." Id. at 2113-14.

This "narrow" holding does not address the jurisdiction of the immigration court, which, as discussed above, is established by regulations. See 8 C.F.R. §§ 1003.13-1003.15, § 1003.18; Gomez-Salinas, 2019 WL 1141063 at *4. As the Ninth Circuit recently held, "[t]he regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a 'notice to appear.'" Karingithi, 913 F.3d at 1160; see also id. at 1161 (discussing how Pereira's analysis "hinge[d] on 'the intersection' of two statutory provisions"); Gomez-Salinas, 2019 WL 1141063 at *5 (quoting Karingithi); Banegas Gomez, 2019 WL 1768914 at *6-8. As the Court

15

in Karingithi so aptly put it, the Supreme Court's "resolution [in Pereira] of that [narrow question at issue] cannot be recast into the broad jurisdictional rule Karingithi advocates." Karingithi, 913 F.3d at 1161; see also Matter of Bermudez-Cota, 27 I. & N. Dec. 441, 443 (BIA 2018) (noting that, had the Supreme Court intended such a far-reaching jurisdictional ruling in Pereira, it likely would not have referred to its holding as "narrow").

The Fourth Circuit's unpublished opinions confirm a narrow holding of Pereira. See Leonard, 746 Fed. Appx. at 269 ("We conclude that the narrow holding of Pereira does not apply in this situation."); Perez-Arellano, 2018 WL 6617703, at *3 ("Simply put, Pereira did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceeding.") (footnote omitted). These authorities are not binding, but they are persuasive.

Several of the authorities cited above approve of the so-called "two-step notice process" to find that jurisdiction vested in the immigration court upon the immigration court's sending (to the alien) of a subsequent NOH informing the alien of the date and time of his hearing. See, e.g., Gomez-Salinas, 2019 WL 1141063, at *5 ("[J]urisdiction vests in the immigration court once a subsequent notice with the date and time is sent.") After Pereira,

16

the Board of Immigration Appeals ("BIA") issued a published decision, Matter of Bermudez-Cota, 27 I. & N. Dec. 441 (BIA 2018), approving of that approach. There, the BIA squarely held that

> a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Act, so long as a notice of hearing specifying this information is later sent to the alien. As noted, Pereira is distinguishable and did not address this issue.

27 I. & N. at 447. The Second, Sixth and Ninth Circuits have expressly approved of the BIA's two-step notice process set forth in Bermudez-Cota. See Banegas Gomez, 2019 WL 1768914 at *7; Hernandez-Perez, 911 F.3d at 313; Karingithi, 913 F.3d at 1161-62; see also Leonard, 746 Fed. Appx. at 269-70 (citing Bermudez-Cota); Romero-Caceres, 356 F. Supp. 3d at 553-54 (approving of Bermudez-Cota); Gomez-Salinas, 2019 WL 1141063 at *6 & n. 8 (citing Bermudez-Cota for support but declining to decide on how much deference to give it).

Here, the record is clear that Torres received an NTA that did not contain the date and time of his removal hearing, which is in accordance with the regulations. Gov't Ex. 5. The record is also clear that, subsequently, an NOH was sent to Torres (who was in an unaccompanied minor shelter at the time) informing him that his immigration court hearing would be held on March 17, 2008 at

9:00 a.m. at a specified location in Phoenix, Arizona.[13] Gov't Ex. 6; see Gomez-Salinas, 2019 WL 1141063 at *6 (NTA did not include date and time, but jurisdiction vested when "the Defendant and his counsel in the removal proceedings were sent a subsequent notice. . .which indicated the hearing would take place [on a specific date]"). And, Torres appeared at his immigration hearing, belying any claim that he did not know of it. Thus, at the latest, the immigration court had jurisdiction on March 4, 2008, when the NOH was sent to Torres, and could appropriately order him removed.

However, even assuming that these two-step notice cases are incorrect, Torres' jurisdictional argument lacks merit. That is so because the term "jurisdiction" in the regulation is not at all akin to the type of "subject matter jurisdiction" for which Torres appears to argue.[14] As Judge Brinkema's sound analysis in Rivera Lopez clearly explains, "section 1003.14 does not impose a subject-matter jurisdictional limitation" on immigration courts. 355 F.

---

[13]    The Certificate of Service does not clearly indicate how it was served on Torres, but he appeared at his hearing on March 17, 2008 and, through his attorney, "concede[d] proper service of the charging document." ECF No. 19 at 2.

[14]    Torres cites several cases for the proposition that when an agency acts outside its statutory authority, its action is "null and void." ECF No. 13 at 11-14.   Those authorities have no applicability here. Indeed, they apply not to prove that the agency lacked jurisdiction but to say that an action taken without jurisdiction is unlawful. Torres cites them in an effort to prove that there was no jurisdiction.

Supp. 3d at 439; <u>Flores</u>, 2019 WL 1756532 at \*3-4 (following <u>Rivera Lopez</u>); <u>Vasquez Flores</u>, 362 F. Supp. 3d at 355-56 (same). "'Jurisdiction' is a term that can convey 'many, too many, meanings.'" 355 F. Supp. 3d at 439 (quoting <u>Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen</u>, 558 U.S. 67, 81 (2009)). Rather than a subject matter jurisdiction limitation, <u>Rivera Lopez</u> analyzed Section 1003.14 as follows:

> In that sense, section 1003.14(a) is more akin to a federal court's local rules, which (like the regulations at issue here) are the product of congressionally delegated gap-filling authority, <u>see</u> Fed. R. Civ. P. 83(a)(1), but which in no way affect the federal court's subject-matter jurisdiction. Accordingly, the best reading of section 1003.14(a) is that although it imposes a procedural requirement on immigration authorities' initiation of removal proceedings, that requirement is not "jurisdictional" in the formal sense, and a defect in a notice to appear does not necessarily render a resulting deportation order void ab initio.

<u>Rivera Lopez</u>, 355 F. Supp. 3d at 439. Several other courts in this Circuit have hewed to that reasoning. <u>See</u> <u>Flores</u>, 2019 WL 1756532 at \*3-4; <u>Cruz Bonilla</u>, 2019 WL 1756533 at \*3-4; <u>Vasquez Flores</u>, 362 F. Supp. 3d at 355-56. And, because the reasoning is both sound and correct, it will be applied here.

Torres' reliance on transitional rules that Congress enacted as part of the 1996 Illegal Immigration Reform and Immigrant

Responsibility Act ("IIRIRA") does not change the conclusion.[15]
See Flores, 2019 WL 1756532 at *3 n.5 (rejecting similar argument);
Cruz Bonilla, 2019 WL 1756533 at *3 n.4 (same). Section 309(c)(2)
of IIRIRA (part of the transitional rules) allows the Attorney
General, in his discretion, to apply new IIRIRA rules to
deportation proceedings that had already commenced. Pub. L. No.
104-208, § 309(c)(2), Sept. 30, 1996, 110 Stat. 3009-626. If the
Attorney General so chose, then "the notice of hearing provided to
the alien under section 235 or 242(a) of such Act shall be valid
as if provided under section 239 of such Act (as amended by this
subtitle) to confer jurisdiction on the immigration judge." Id. §
309(c)(2). Torres argues that this transitional rule establishes
that Congress intended NTAs to be jurisdictional. ECF No. 13 at 7-
8.

That argument fails for several reasons. First, as set out
above, the use of the term "jurisdiction" "convey[s] many, too
many, meanings." Rivera Lopez, 355 F. Supp. 3d at 439 (internal
quotation omitted). It does not follow from the transitional rule's

---

[15]    Congress enacted certain rules to help with the transition
between the IIRIRA's passage in 1996 and its effective date of
April 1, 1997. See Cruz Bonilla, 2019 WL 1756533 at *3 n.4; Pub.
L. No. 104-208, § 309, Sept. 30, 1996, 110 Stat. 3009-626. The
Fourth Circuit has described IIRIRA's transitional rules as
"apply[ing] to aliens who were involved in deportation proceedings
initiated prior to April 1, 1997, and [who] were issued a final
deportation order more than thirty days after September 30, 1996."
Okpa v. U.S. I.N.S., 266 F.3d 313, 317 (4th Cir. 2001).

use of the term "jurisdiction" that Torres' removal is void for lack of jurisdiction or is <u>ultra vires</u>. Second, the transitional rules were not even in force at the time of Torres' removal proceedings in 2008. <u>See</u> <u>Okpa v. U.S. I.N.S.</u>, 266 F.3d 313, 317 (4th Cir. 2001) (transitional rules "apply to aliens who were involved in deportation proceedings initiated prior to April 1, 1997, and [who] were issued a final deportation order more than thirty days after September 30, 1996"). Third, Torres has provided no authority explaining what effect transitional rules have on statutes codified in the United States Code. <u>See generally</u> 8 U.S.C. § 1229 (no reference to jurisdiction in statute); <u>Gomez-Salinas</u>, 2019 WL 1141063 at *4 (same). Nor has Torres provided any authority establishing that these transitional rules establish the type of jurisdiction for which he argues. <u>But see</u> <u>Flores</u>, 2019 WL 1756532 at *3 n.5 (rejecting similar argument); <u>Cruz Bonilla</u>, 2019 WL 1756533 at *3 n.4 (same). Accordingly, this argument will be so rejected.

### (3) Conclusion As To Jurisdiction

For the foregoing reasons, the immigration court's 2008 removal order was not void for lack of jurisdiction.

### B. Section 1326(d)

Thus, it is necessary to consider whether Torres has satisfied the three required elements of Section 1326(d) to collaterally

challenge his 2008 removal. See Moreno-Tapia, 848 F.3d at 166; Romero-Caceres, 356 F. Supp. 3d at 546-47. Torres has the burden to show that he has satisfied all three requirements of Section 1326(d) by a preponderance of the evidence. Galcia, 2016 WL 4054926, at *2; see also El Shami, 434 F.3d at 663 (discussing how the "requirements are listed in the conjunctive, so a defendant must satisfy all three in order to prevail").

Torres has failed to satisfy the requirements of Section 1326(d) and he makes the Section 1326(d) argument only in passing. His exceedingly short Section 1326(d) argument is entirely premised on the argument about the immigration court's jurisdiction. See ECF No. 13 at 15-16. He argues that, because the immigration court lacked jurisdiction, he is excused from exhausting administrative remedies (which he clearly has not done) and from demonstrating a deprivation of judicial review (Torres did not seek judicial review and in fact waived appeal). He argues that "[p]rejudice from a void order is also presumed" and that there was a due process violation where the immigration court's order lacked jurisdiction. Id.[16]

For the reasons set forth above, Torres' argument that the immigration court lacked jurisdiction to order Torres removed in

---

[16]  In support, Torres cites District Court cases from the Northern District of California, the Western District of Texas, and the District of North Dakota.

22

2008 has been rejected. Thus, on its own terms, Torres' Section 1326(d) argument fails. Torres has made no other argument that he has satisfied (or is excused from) the requirements of Section 1326(d), and accordingly, his collateral challenge must be rejected.[17]

## CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 13) will be denied.

It is so ORDERED.

/s/  *REP*
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May _16_, 2019

---

[17]   The Court notes that, at the March 17, 2008 removal hearing, while represented by counsel, Torres admitted the allegations in the NTA, waived judicial review, and asked to be removed to Honduras. ECF No. 19 at 2-4. And, having been previously granted voluntary departure in 2007, Torres likely cannot demonstrate a "reasonable probability" that he would have been granted voluntary departure (i.e. not deported) again in 2008, meaning that he cannot show prejudice. See United States v. Ordoñez, 328 F. Supp. 3d 479, 496 (D. Md. 2018) (citing 8 U.S.C. § 1229c(c)); In re Arguelles-Campos, 22 I. & N. Dec. 811, 818 (BIA 1999) (where alien had previously received voluntary departure, a subsequent request for voluntary departure did "not merit the relief in the exercise of [the Immigration Judge's] discretion"). In other words, the clear record demonstrates that Torres fails the Section 1326(d) requirement. Indeed, apart from his jurisdictional argument, Torres has not argued otherwise.

23